UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| PHIYEN LESSOR, | ) | NO. CV-09-5072-LRS |
|---|---|---|
| Plaintiff, | ) | |
| | ) | **ORDER GRANTING** |
| | ) | **DEFENDANT'S MOTION** |
| v. | ) | **FOR SUMMARY JUDGMENT** |
| | ) | |
| J.C. PENNEY CORPORATION, INC., | ) | |
| Defendant. | ) | |

**BEFORE THE COURT** is the Defendant's Motion For Summary Judgment (Ct. Rec. 18). Oral argument was heard on December 21, 2010. Ronald F. St. Hilaire, Esq., argued on behalf of Plaintiff. Gregory M. Bair, Esq., argued on behalf of Defendant.

**I. BACKGROUND**

This is an employment discrimination case. Plaintiff Phiyen Lessor asserts federal claims under 42 U.S.C. Section 1981 and under Section 2000e *et seq.* (Title VII) for discrimination based on national origin, hostile work environment based on national origin, and wrongful termination based on national origin. She asserts the same claims under the Washington Law Against Discrimination (WLAD), RCW Chapter 49.60. All of these claims arise out of the termination of Plaintiff's employment by the Defendant, J.C. Penney.

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 1**

## II.  FACTS

Plaintiff was a stylist in J.C. Penney's hair salon at Columbia Center in Kennewick, Washington.  She was hired on March 24, 1998, and was terminated at the end of May 2008.  Plaintiff is Asian and Vietnamese in national origin.

For several years prior to her termination (approximately from 2004 onward), Plaintiff's manager in the salon was Holly Bates.  Bates was the manager when Plaintiff was promoted to the position of senior stylist.  Between January and May 2008, a number of customer complaints were registered regarding work performed by Plaintiff.  Salon Manager Bates spoke to Plaintiff in May 2008 regarding the complaints.  Store Manager Lee Boman instructed Bates to prepare a performance plan for the Plaintiff requiring her to receive additional training and accept no new clients until the training was completed.  This performance plan was discussed verbally with the Plaintiff.  Plaintiff declined to accept the performance plan.  Mr. Boman then instructed Bates to terminate the Plaintiff's employment.

## III.  DISCUSSION

### A.  Summary Judgment Standard

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court.  *Zweig v. Hearst Corp.*, 521 F.2d 1129 (9th Cir.), *cert. denied*, 423 U.S. 1025, 96 S.Ct. 469 (1975).  Under Fed. R. Civ. P. 56, a party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505 (1986); *Semegen v. Weidner*, 780 F.2d 727, 732 (9th Cir. 1985).  Summary judgment is precluded if there exists a genuine dispute over a fact that might affect the outcome of the suit under the governing law.  *Anderson*, 477 U.S. at 248.

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 2**

1    The moving party has the initial burden to prove that no genuine issue of

2   material fact exists. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475

3   U.S. 574, 586, 106 S.Ct. 1348 (1986). Once the moving party has carried its

4   burden under Rule 56, "its opponent must do more than simply show that there is

5   some metaphysical doubt as to the material facts." *Id*. The party opposing

6   summary judgment must go beyond the pleadings to designate specific facts

7   establishing a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325,

8   106 S.Ct. 2548 (1986).

9    In ruling on a motion for summary judgment, all inferences drawn from the

10  underlying facts must be viewed in the light most favorable to the nonmovant.

11  *Matsushita*, 475 U.S. at 587. Nonetheless, summary judgment is required against

12  a party who fails to make a showing sufficient to establish an essential element of

13  a claim, even if there are genuine factual disputes regarding other elements of the

14  claim. *Celotex*, 477 U.S. at 322-23.

15

16   **B. Disparate Treatment Claims**

17    Under 42 U.S.C. Section 1981, discrimination based on "ancestry or ethnic

18  characteristics" is prohibited. *St. Francis College v. Al-Khazraji*, 481 U.S. 604,

19  612, 107 S.Ct. 2022 (1987). "Although national origin discrimination is not

20  within the ambit of §1981, race has been defined broadly to cover immigrant

21  groups." *Fonseca v. Sysco Food Services of Arizona, Inc.*, 374 F.3d 840, 850 (9th

22  Cir. 2004). "Analysis of an employment discrimination claim under §1981

23  follows the same legal principles as those applicable in a Title VII disparate

24  treatment case. *Id*. Both require proof of discriminatory treatment and the same

25  set of facts can give rise to both claims." *Id*.

26    In order to prevail on a Title VII claim of discrimination, a plaintiff must

27  first establish a prima facie case of discrimination consisting of the following

28  elements:  1) plaintiff belongs to a protected class; 2) she was performing her job

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 3**

according to the employer's legitimate expectations; 3) she suffered an adverse employment action; and 4) other employees with qualifications similar to her own were treated more favorably. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817 (1973). If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its adverse employment decision. *Id*. Once the defendant satisfies this burden, the plaintiff must demonstrate that the employer's alleged reason for the adverse employment decision is pretext for a discriminatory motive. *Id*. at 804.

The burden of proving pretextual discriminatory motive can be met by demonstrating that the employer's proffered explanation for its adverse employment decision is inconsistent or otherwise unbelievable. *Dominguez-Curry v. Nevada Transp. Dept.*, 424 F.3d 1027, 1037 (9th Cir. 2005). The plaintiff may offer direct or circumstantial evidence of discriminatory animus. *Id*. at 1038. Direct evidence is evidence that proves discriminatory animus without the need for inference or presumption. *Id*. Such evidence typically consists of overtly discriminatory comments or actions by the employer and creates a triable issue for the finder of fact, even if the evidence is insubstantial. *Id*. Circumstantial evidence, which relies upon inferences and presumption, must be both specific and substantial in order to withstand summary judgment. *Id*.

Washington courts use the same burden-shifting analysis in evaluating claims under the Washington Law Against Discrimination (WLAD). *Roeber v. Dowty Aerospace Yakima*, 116 Wn.App. 127, 135, 64 P.3d 691 (2003). Whether judgment as a matter of law is appropriate depends on the strength of the employee's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence supporting the employer's case. If the record contains reasonable , but competing inferences of discrimination and nondiscrimination, the case should be determined by the trier of fact. The ultimate question is whether there is sufficient evidence to reasonably conclude that

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 4**

discrimination was a substantial factor in the employee's discharge. *Id*. at 136. Generally, when an employee produces his or her prima facie case plus evidence of pretext, a trier of fact must determine the true reason for the action because the record contains reasonable, but competing inferences of both discrimination and nondiscrimination. *Riehl v. Foodmaker, Inc.*, 152 Wn.2d 138, 150, 94 P.3d 930 (2004). The mere existence of a prima facie case based on the minimum evidence necessary to raise a presumption of discrimination is insufficient to raise a genuine issue of material fact as to pretext. *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 890 (9th Cir. 1994).

In order to demonstrate on summary judgment that an employer's stated rationale for an employment decision was pretextual, the employee must produce evidence from which a trier of fact could infer that the employer's articulated reasons for the employment decision: (1) have no basis in fact; (2) were not really motivating factors for the decision; or (3) were not motivating factors in employment decisions for other employees in the same circumstances. *Dumont v. City of Seattle*, 148 Wn.App. 850, 867, 200 P.3d 764 (2009). Direct evidence of discriminatory intent is not required. Circumstantial, indirect and inferential evidence will suffice to discharge a plaintiff's burden. *Id*. at 867-68.

A critical issue with regard to Plaintiff's disparate treatment claims is the number of customer complaints registered against her in the five month period between January and May 2008. This relates to the second element of Plaintiff's prima facie case: whether she was performing her job according to the employer's legitimate expectations. Assuming Plaintiff can establish a prima facie case, the number of customer complaints also relates to whether Defendant can articulate a legitimate, nondiscriminatory reason for terminating the Plaintiff's employment.

Defendant says Plaintiff was the subject of in excess of ten customer complaints between January and May 2008. The record confirms this is so. See Bates Affidavit In Support Of Reply (Ex. 1 to Ct. Rec. 34 at p. 2). These customer

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 5**

complaints are documented by records ("travelers") included as part of Exhibit 44 presented to Bates during her July 13, 2010 deposition by Plaintiff's counsel (Ex. 1 to Ct. Rec. 32 at pp. 130-209; JCP 151, 155, 163, 165-169, 172-174, 177-178, 186, 189, 196-197, 199-200, 202-203, 211-212). Nowhere in her Affidavit (Ex.1 to Ct. Rec. 31), or her deposition, does the Plaintiff dispute the existence of these particular customer complaints. Plaintiff's counsel asserts that at Bates' July 2010 deposition, she exhibited "a general lack of personal knowledge, and was unable to identify ten complaints." Plaintiff's counsel alleges what he regards as particular deficiencies with respect to the complaints (i.e, one of the complaints was against the receptionist and not the Plaintiff). (See Ct. Rec. 30 at pp. 7-8). It is apparent, however, that the majority of the customer complaints which Plaintiff's counsel focused upon and examined Bates about during her deposition (JCP 154, 156, 157, 160, 161, 170, 171, 179, 180, 181, 182, 195, 204) are not the complaints Bates relied upon in determining Plaintiff was not meeting her employer's expectations. (See Bates Dep., Ex. 1 to Ct. Rec. 32 at pp. 30-60). Bates says the customer complaints she relied upon are JCP 151, 203, 185, 186, 155, 202, 196 to 197, 199 to 200, 163, 165 to 169, 172-174, 177-78, and 211-212. (Bates Declaration at p. 2, Ex. 1 to Ct. Rec. 34).

At her deposition, Bates was asked about a few of the customer complaints which she relied upon in determining Plaintiff was not meeting expectations (JCP 151, 163, 165 to 169). She indicated she did not know if JCP 151 and 163 were among the complaints counted against Plaintiff (Bates Dep., Ex. 1 to Ct. Rec. 32 at p. 37and 43). Prior to commencement of this litigation, Plaintiff filed an Equal Employment Opportunity Commission (EEOC) complaint and in response thereto, Defendant prepared a chart ("History of 'Re-Dos' or Complaints") showing the number of "re-dos" or complaints against a stylist during each year between 2006 and 2009. (Ex. 1 to Ct. Rec. 32 at p. 78; Bates Dep., Ex. 2-B to Ct. Rec. 34 at p. 213). Plaintiff had by far the most complaints (21), including 12 in 2008 alone.

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 6**

Three other stylists had a total of five (5) complaints, that being the second-highest total. (Ex. 1 to Ct. Rec. 32 at p. 78). Bates testified that although she thought the chart (hereinafter "EEOC Chart") was accurate at the time it was created, she no longer considered it to be accurate. (Bates Dep., Ex. 1 to Ct. Rec. 32 at p. 14). Bates was uncertain whether Exhibit 44 presented to her at her deposition included all of the 12 re-dos or complaints listed on the EEOC Chart. (*Id*. at p. 59).

Plaintiff contends there is evidence indicating there were certain complaints against other stylists which were not counted against them. Prior to Bates' deposition, Plaintiff received, from an anonymous source, certain customer complaints ("travelers") which were presented to Bates as Exhibit 43 to her deposition. (Ex. 1 to Ct. Rec. 32 at pp. 79-129). Bates acknowledged that the EEOC Chart did not show any complaints against Megan Hooks in 2008, but that in fact, per the records received by Plaintiff, there had been two complaints against Hooks during that year. (Bates Dep., Ex. 1 to Ct. Rec. 32 at pp. 16-17; Ex. 1 to Ct. Rec. 32 at pp. 99-100). Hooks is considered to be a "Caucasian" stylist. Bates acknowledged that "Caucasian" stylist Michelle Collins was not listed on the EEOC Chart at all, although per the records received anonymously by Plaintiff, there had been complaints against Collins in 2007 and 2008 (Bates Dep., Ex. 1 to Ct. Rec. 32 at  pp. 18-20 and 23-29; Ex. 1 to Ct. Rec. 32 at pp. 119-22). Bates acknowledged the EEOC Chart did not show any complaints registered against "Caucasian" stylist Heather Avelar in 2007, although per the records received by Plaintiff, there had been a complaint against Avelar during that year (Bates Dep., Ex. 1 to Ct. Rec. 32 at pp. 20-21; Ex. 1 to Ct. Rec. 32 at p. 118).

The alleged implication here is that Defendant perhaps withheld records in an effort to conceal discrimination against the Plaintiff. As noted above, however, Bates readily acknowledged at her deposition that she no longer considered the EEOC Chart ("History of 'Re-Dos' or Complaints") to be accurate. She explained

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 7**

this was "[b]ecause I have seen other travelers that were obviously not included in this tally that were obviously correct complaints or re-dos that I wasn't aware of or that were misplaced, out of order, in two different files, or maybe not even in the salon or the store at that time."  (Bates Dep. at p. 214; Ex. 6 to Ct. Rec. 34).  In her October 2010 declaration, Bates states:

> I assisted in discovery during this lawsuit.  In particular, I was asked by JC Penney's attorney to located [sic] and copy all "travelers" (i.e., customer service records) that refer to re-dos or customer complaints from 2005 to present.  I searched for and copied all such documents and sent them to my attorney.  To the best of my knowledge, no documents were excluded and everything I was able to locate was given to my attorney to be produced to Ms. Lessor.

> I did become aware during depositions in this case that someone had sent copies of documents to Ms. Lessor anonymously.  I do not know who might have sent these copies, nor do I know whether those documents were altered, whether the information on the copies sent to Ms. Lessor are completely accurate, or whether any of these documents were removed from the store at the time the copies were sent.  It is my understanding that these documents were sent before we received the discovery request described above, so if any documents were removed, they may not be among the documents I sent to JC Penney's attorneys.

(Ex. 1 to Ct. Rec. 34 at p. 5).

Although the record keeping on customer complaints may not have been precise as it could have been,  the Plaintiff herself does not dispute that at least ten complaints were registered against her in the five month period between January and May 2008.  Plaintiff may dispute the validity of the complaints registered, but she does not dispute that such complaints were in fact registered.[1]  Furthermore, even if the additional complaints registered against Hooks, Collins and Avelar are included in the EEOC Chart ("History Of 'Re-Dos' Or Complaints"), their

---

[1] Plaintiff does not offer any evidence calling into question the validity of the complaints relied upon by Defendant in concluding that Plaintiff was not meeting her employer's expectations.

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 8**

numbers for 2008 and overall would still not come close to approaching the number of complaints against Plaintiff in 2008 (12) and overall (21). With the addition of two complaints in 2008, Hooks would have a total of three complaints. With the addition of one complaint in 2007, Avelar would have a total of three complaints (and still no complaints in 2008). If Collins were added to the list, it appears she would have two complaints in 2007 and two complaints in 2008 for a total of four complaints. Those totals are similar to the totals reflected on the EEOC Chart for Asian stylists Yasuko Calley (5 total; 1 in 2008); Outhong Ath Phongphouvanh (2 total; 0 in 2008); and Amanda Anema (1 total; 0 in 2008). In her declaration filed August 27, 2010 (Ex. 2 to Ct. Rec. 19, pp. 2-3), Bates states:

> There were other Asian American stylists working at the salon at the same time as Ms. Lessor, including Sisa Outhibchamporn (Laotian), Outhong Ath Phongphouvanh (Laotian), Amanda Anema (Korean), Yasuko Calley (Japanese), Kecia Kuulei Doas (Hawaiian/Pacific Islander).[2] None of these stylists had the same level of customer service issues that Ms. Lessor had during the first five months of 2008, prior to her termination. Other than Ms. Lessor, no other Asian American stylists working in the salon have been terminated in the salon for any reason.

> During the time that I have been the salon manager, several stylists have been either terminated, resigned in lieu of termination, or moved into other positions due to productivity issues, including Jennilyn Cummings, Michelle Collins[3], Trinity Hill, Debbie Wolf and Brittny Yancey. None of these stylists were Asian American; to the best of my knowledge, each of thee [sic] stylists is Caucasian.

In addition to there being ten or more complaints registered against the Plaintiff during the first five months of 2008, it is undisputed that Plaintiff refused to comply with the performance plan verbally proposed by Defendant. (See

---

[2] "Sisa" and "Kecia" did not make the list of stylists on the EEOC Chart a/k/a "History of 'Re-Dos' or Complaints," perhaps because there were no complaints registered against them.

[3] This is the same Michelle Collins referred to above who was omitted from the list of stylists on the EEOC Chart a/k/a "History of 'Re-Dos' or Complaints."

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 9**

Lessor Affidavit, Ex. 1 to Ct. Rec. 31, at Paragraphs 14 and 15).  Plaintiff says she did not believe she should be required to have "individualized training" and was even "more concerned with the prohibition on walk-in clients . . . as the prohibition on walk-in clients was designed to cause me to fail to meet the required productivity, giving Holly Bates a legitimate basis to terminate me." Contrary to Plaintiff's assertion, nowhere in Bates' deposition testimony does she assert that a performance plan was actually written up.  (Bates Dep., Ex. 1 to Ct. Rec. 32 at p. 67).  Nor does she make any such assertion in her affidavit filed in August 2010.  (Ex. 2 to Ct. Rec. 19 at p. 2).  In her October 2010 reply affidavit, Bates says that because Plaintiff "refused to accept the plan as discussed, a written performance plan was never created for Ms. Lessor."  (Ex. 1 to Ct. Rec. 34 at Paragraph 6).  The verbal plan included training to improve technical skills, product choices, and consultation skills, and not to receive any new walk-in customers.  (Bates Dep., Ex. 1 to Ct. Rec. 32 at pp. 67-69).

Based on the foregoing, the court seriously questions whether Plaintiff has established two elements of her prima facie case, that being "she was performing her job according to the employer's legitimate expectations," and that "other employees with qualifications similar to her own were treated more favorably." But even assuming those elements are somehow satisfied (i.e, because Plaintiff worked ten years at the salon and there is no indication of any trouble prior to 2004 when Bates took over as a manager), Defendant has clearly articulated a legitimate non-discriminatory reason for Plaintiff's termination.  The question then is whether there is any evidence of pretext.

Plaintiff contends she has direct evidence of discriminatory animus on the part of Bates.  Plaintiff recalls she once asked Bates why she did not like the Plaintiff and Bates allegedly responded: "Because you are Vietnamese.  You cannot understand clients and that is why they complain."  (Lessor Affidavit, Ex. 1 to Ct. Rec. 31, at Paragraph 10).  Plaintiff says she was reminded of this because

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 10**

1   of a note which she wrote to herself in her daughter's music book regarding the

2   incident.  Plaintiff says though her note did not state a specific date, and she does

3   not recall the specific date of the incident with Bates, she "**now** has a clear

4   recollection of this incident" and her recollection "is independent of the note."

5   (Emphasis added).[4]

6         At her deposition, which preceded the filing of her aforementioned

7   affidavit, Plaintiff testified she wrote the note some time after the incident with

8   Bates, "during the time period that [she] filed a complaint with the EEOC," and it

9   was not until the very day of her deposition that she looked at the notebook and

10  "remembered." (Lessor Dep., Ex. 2-A to Ct. Rec. 34, at p. 47).[5]  Plaintiff did not

11  "really remember" whether she wrote the note before or after her EEOC

12  complaint.  (*Id*. at 69).  She testified her attorney had taken the notebook

13  previously and that she examined it again the morning of her deposition.  (*Id*. at p.

14  46).  It is not clear from this deposition testimony whether Plaintiff was saying she

15  only remembered the note, or whether she also remembered the incident to which

16  the note referred.[6]

17        There are a couple of significant things about this note and its reference to

18  the alleged remark by Bates.  There is no indication Bates' alleged remark was

19  included in the complaint Plaintiff filed with EEOC.  Nor is the remark mentioned

20

21        [4] Reliance on the note by itself is problematic in that it would not qualify
22  under the recorded recollection exception to the hearsay rule because Plaintiff
    cannot show the note was made or adopted by her when the matter was fresh in her
23  memory. Fed. R. Evid. 803(5).  The note is appended as an exhibit to Plaintiff's
    deposition, Ex. 3 to Ct. Rec. 19.

24
25        [5] Per Plaintiff's Complaint, her EEOC charge was filed on July 14, 2008,
    approximately a month and a half after her employment was terminated at the end
26  of May 2008.

27        [6] It appears counsel asked Plaintiff if she was remembering the alleged
    remark now at her deposition two years later.  Plaintiff responded that because she
28  wrote it down in the notebook, she "was able to remember it."  (Lessor Dep., Ex.
    2-A to Ct. Rec. 34, at pp. 46-47) and that it "refreshed" her memory (*Id*. at p. 69).

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 11**

1   in the Plaintiff's Complaint here and it did not surface in this litigation until the
2   morning of Plaintiff's deposition.  (*Id.* at pp. 45-46).  There was no mention of it
3   in Plaintiff's answer to Defendant's Interrogatory No. 1 asking Plaintiff to detail
4   all the facts of the alleged discrimination against her.  (Ex. 6 to Ct. Rec 19 at pp. 4-
5   5).  Secondly, Plaintiff acknowledged she never told Store Manager Lee Boman
6   that Bates allegedly made such a remark to her.  (*Id.* at 45).  There is no dispute
7   Boman was the individual who made the decision to terminate the Plaintiff's
8   employment.

9       Defendant contends Plaintiff's post-deposition affidavit stating she "now
10  has a clear recollection of the incident" and that it is "independent of the note" is
11  contrary to what she testified to during her deposition and therefore, the affidavit
12  should be disregarded.  It is not clear, however, that what Plaintiff stated in her
13  affidavit is directly contrary to what she testified to during her deposition.  At her
14  deposition, Plaintiff did not explicitly state having no recollection whatsoever of
15  Bates' alleged remark independent of the note, although her failure to make any
16  mention of the alleged remark prior to the deposition arguably infers she did not
17  have any independent recollection at the time of her deposition.  In any event,
18  Plaintiff's credibility regarding the alleged remark is called into question because
19  of  her failure to recall, at anytime prior to her deposition, what was arguably an
20  overtly discriminatory remark by her supervisor.  Although credibility is usually
21  an issue which cannot be resolved on summary judgment, summary judgment for
22  Defendant is still warranted.  This is because Plaintiff admits  she never informed
23  Store Manager Boman of the alleged discriminatory remark and it was Boman
24  who made the  decision to terminate Plaintiff.  (Boman Affidavit, Ex. 1 to Ct. Rec.
25  19).  According to Boman, it was Plaintiff's refusal to accept the performance plan
26  which prompted him  to decide Plaintiff should be terminated.  Boman says Bates
27  recommended Plaintiff not be terminated, but that when Plaintiff refused to accept
28  the performance plan, Bates accepted Boman's instruction to terminate Plaintiff's

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 12**

1    employment. (Boman Affidavit at Paragraphs 7-9).[7]  Plaintiff does not allege that
2    Boman acted with any discriminatory animus towards her. (Lessor Dep., Ex. 3 to
3    Ct. Rec. 19, at p. 37).

4        The record is devoid of circumstantial evidence of pretext.  There were ten
5    or more complaints registered against the Plaintiff in the first five months of 2008,
6    significantly more than against any other stylist in that same period of time.
7    Plaintiff refused to accept the terms of the performance plan proposed by
8    Defendant. Plaintiff asserts she was justified in refusing to accept the performance
9    plan because it temporarily prohibited her from receiving any new walk-in clients
10   even though she was already very proficient in certain areas of styling (i.e., men's
11   haircuts). (Lessor Affidavit, Ex. 1 to Ct. Rec. 31, at Paragraphs 14 and 15).
12   Equally legitimate, however, is the assertion of Bates and Boman that the
13   prohibition on all new walk-in clients was to serve as an incentive to Plaintiff to
14   complete the additional training and improve her performance. (Boman Affidavit
15   at Paragraph 6; Bates Affidavit, Ex. 2 to Ct. Rec. 19, at Paragraph 4).

16       The affidavits of Amanda Anema and Tina Alaniz (Exs. 2 and 3 to Ct. Rec.
17   31) submitted by Plaintiff in opposition to summary judgment do not create an
18   issue of material fact regarding the existence of pretext.  They are not specific and
19   substantial enough to create a reasonable inference that discharging Plaintiff for a
20   high number of customer complaints within a short period of time and failing to
21   accept a performance  plan served as a pretext for discriminating against the
22   Plaintiff because she is Vietnamese.  The Anema and Alaniz affidavits are not
23   competent evidence of discrimination against Asian stylists in general, and against

24   _____

25       [7] In her Affidavit, Plaintiff says Bates terminated her after Plaintiff refused
26   to sign off on a "policy violation." (Ex. 1 to Ct. Rec. 31 at Paragraph 18).  This
     does not create an issue of material fact precluding summary judgment as it
27   remains undisputed that Plaintiff did not accept the performance plan and that
28   Boman instructed Bates to terminate the Plaintiff as a result.

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 13**

Plaintiff specifically.  Other than Amanda Anema, who is of Korean descent, none of the other Asian stylists at the salon have alleged discrimination based on national origin.  None of the Asian stylists, including Anema, corroborated Plaintiff's assertion that there is an "Asian corner" of the salon where Asian stylists are "hidden."  Plaintiff seemingly acknowledged there were certain Asian stylists who were not in this alleged "corner," and that there was at least one Caucasian stylist who was in the alleged "corner."  (Lessor Dep., Ex. 2-A to Ct. Rec. 34, at p. 96).

Plaintiff suggests Bates delayed paperwork for Plaintiff to gain a promotion to "Senior Stylist" and thereafter delayed the printing of business cards for Plaintiff containing the title "Senior Stylist."  (Lessor Affidavit, Ex. 1 to Ct. Rec. 31, at Paragraph 9).  It is undisputed, however, that Plaintiff eventually did receive her promotion at the request of Bates.

Generally, when an employee produces his or her prima facie case plus evidence of pretext, a trier of fact must determine the true reason for the action because the record contains reasonable, but competing inferences of both discrimination and nondiscrimination.  Plaintiff has not established a prima facie case of discrimination.  And even if that has been somehow established, the court concludes Plaintiff has not offered sufficient evidence of pretext to create a genuine issue of material fact as to the existence of pretext.  The record does not contain reasonable competing inferences of both discrimination and nondiscrimination.

## C.  Hostile Work Environment Claims

Title VII bars not only discrimination as it is traditionally understood, but also hostile work environment harassment.  To prevail on a Title VII hostile workplace claim premised on race/national origin, a plaintiff must show: 1) that she was subject to verbal or physical conduct of a racial nature; 2) that the conduct

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 14**

was unwelcome; and 3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment. *Vasquez v. County of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003). To determine whether conduct is severe and pervasive, the court looks at the context of alleged harassment to determine its frequency and severity, whether it is physically threatening or humiliating, and the extent to which it unreasonably interferes with the employee's work performance. *Id*. The working atmosphere must be both subjectively and objectively abusive. *Id*.

The same is true under the WLAD. To establish a hostile work environment harassment case under the WLAD, a plaintiff must prove: (1) the harassment was unwelcome; (2) the harassment was because of race; (3) the harassment affected the terms or conditions of employment; and (4) the harassment is imputed to the employer.[8] *Estevez v. Faculty Club of the Univ. of Wash.*, 129 Wn.App. 774, 794, 120 P.3d 579 (2005). A hostile work environment claim requires consideration of the totality of the circumstances and whether the conduct involved words alone, or also included physical conduct. *Clarke v. State Attorney General's Office*, 133 Wn.App. 767, 787, 138 P.3d 144 (2006). The conduct must be both objectively abusive and subjectively perceived as abusive by the victim. *Id*.

Plaintiff has not produced sufficient evidence to raise a genuine issue of material fact that she was subject to verbal or physical conduct of a racial nature that was sufficiently severe or pervasive to alter the conditions of her employment. Plaintiff has not produced sufficient evidence to raise a genuine issue of material fact that she was subject to a work atmosphere that was "objectively abusive."

---

[8] Federal regulations provide that an employer is responsible for workplace harassment if the alleged harassment is between "fellow employees" and the employer "knows or should have known of the conduct." 29 C.F.R. Section 1604.11(d).

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 15**

Furthermore, she has not presented any evidence which would allow imputation of alleged employee conduct to the employer.

At her deposition, Plaintiff acknowledged she had not been subject to "racial language," but asserted Bates would stare at Plaintiff when she was speaking Vietnamese with her Vietnamese clients. (Ex. 3 to Ct. Rec. 19, Lessor Dep. at p. 61). Plaintiff testified, however, that Bates never told her to not speak Vietnamese with her clients, and that it was Plaintiff who told her clients not to speak Vietnamese and to not speak too loudly. (*Id*. at p. 112).

Plaintiff acknowledged she had not been subject to any racial epithets and that no one had called her derogatory names because she is Vietnamese. (*Id*. at p. 62). Although she claimed that one time she walked into the lunchroom and heard the word "Vietnamese" and then laughter, she could not identify whether this involved the telling of a derogatory racial joke. (*Id*. at pp. 63-64). Plaintiff claimed other stylists would stare at her and say things, but she did not know what they said and could not identify the specific stylists involved. (*Id*. at pp. 64-65). She never saw any racially offensive drawings. (*Id*. at p. 65).

Plaintiff says she was "pushed" on occasion, but could not identify the individuals involved and could only speculate that it was racially motivated. Plaintiff admitted the "pushes" could also have been the result of the "tight space" in which she worked. She was not physically hurt by this conduct, although she asserts it made her "uncomfortable." (*Id*. at pp. 65-66).

Just as importantly, Plaintiff never asserts that she reported any of the foregoing alleged unwelcome conduct to her employer such that it could be imputed to the employer. (*Id*. at p. 64 and p. 66).

Nothing in Plaintiff's Affidavit submitted in opposition to summary judgment (Ex. 1 to Ct. Rec. 31 at Paragraphs 6 and 7) raises a genuine issue of material fact that Plaintiff was subject to verbal or physical conduct of a racial nature and that it was severe or pervasive enough to affect her work performance

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 16**

and alter the terms and conditions of her employment. Plaintiff alleges Bates would not allow her to continue chatting with her Vietnamese clients after completing their hair and would require her to fold towels, but did not treat Caucasian stylists in the same manner. Plaintiff says Bates would require her to fold towels and clean up around the salon even when Plaintiff had a customer who was waiting for her hair to dry or for some procedure to cure, but did not require the same of Caucasian stylists. Plaintiff acknowledged in deposition testimony, however, that folding towels and cleaning up were routine duties of stylists in the salon. (Lessor Dep., Ex. 3 to Ct. Rec 19, at p. 111).

Finally, assuming Bates did make the remark Plaintiff attributes to her ("Because you are Vietnamese"), that single isolated incident is insufficient to create a genuine issue of material fact that Plaintiff was subjected to a hostile working environment.

In the end, even if Plaintiff subjectively believed that when she went to work she "was going to danger," the alleged conduct simply was not objectively abusive enough to create a hostile working environment.

**IV.  CONCLUSION**

The court finds as a matter of law that Plaintiff was not subject to a hostile work environment because of her national origin and that she was not otherwise discriminated against because of her national origin. Accordingly, Defendant's Motion For Summary Judgment (Ct. Rec. 18) is **GRANTED** and Defendant is awarded judgment on all of Plaintiff's claims.

///
///
///
///
///

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 17**

1
2
3

**IT IS SO ORDERED.**  The District Court Executive is directed to enter judgment accordingly and forward copies of the judgment and this order to counsel of record.

4          **DATED** this ____19th____ day of January, 2011.

5

6                              _____*s/Lonny R. Suko*_____
7                                   LONNY R. SUKO
                              Chief United States District Judge

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 18**